AURORE SIMS
C/O BENJAMIN LAMBERT
111 EAST 128TH ST 7Z
NEW YORK, NY 10035
(929) 575-2365
PLAINTIFF IN PRO SE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Aurore Sims,

          Plaintiff,

   vs.

Assia Souily-Lefave, Around Vegas, LLC -1 Day In Las Vegas,

      Defendants

Case No. 2:24-cv-00831-CDS-EJY

**SUPPLEMENTAL FILING IN SUPPORT OF MOTION FOR SANCTIONS**

**Introduction**

While preparing my Amended Opposition Motion to Defendant's Amended Motion to Dismiss (ECF 89), I discovered a reply (ECF 74) filed on September 26, 2024, that I had never seen or received from Mr Liebrader, the defendants counsel. Typically, Mr. Liebrader had sent me his filings by email, but this document was not provided to me. Since I do not receive electronic notifications from the court on PACER when a filing is made, I must manually check the docket almost daily to stay informed of any activity. Despite this effort, I only became aware of this reply yesterday. This reply contains defamatory statements that harm my case and exemplify a broader pattern of misconduct by Mr. Liebrader, which has persisted throughout this litigation. This action is not isolated but reflect a continuous disregard for both procedural fairness and professional ethics. From repeatedly filing motions with inaccuracies to making defamatory remarks, Mr. Liebrader's conduct has had a direct and prejudicial effect on my ability to present my case and seek justice. Before undergoing surgery, and while I still have the strength to address these issues, I believe it is crucial for the court to be made aware of the counsel's behavior. The repeated inaccuracies, manipulative tactics, and harmful statements are not only an obstruction to the fair conduct of this case but havenalso created unnecessary strain on me, particularly given my current health condition. This motion seeks sanctions for Mr. Liebrader's actions, including his repeated inaccuracies, defamatory statements, and disregard for procedural fairness. These actions have not only prejudiced against my case but have also caused significant mental and emotional harm. His conduct reflects a troubling lack of professionalism and adherence to ethical standards, which I respectfully ask the court to address. The ongoing stress and psychological toll his actions have imposed on me and my family are ignificant and should be taken into consideration in determining appropriate sanctions.

**I. Lack of Professionalism and Disrespectful Behavior**

**1. Attitude Towards me, the Plaintiff**

Mr. Liebrader's tone in communication reflects a disregard for professional courtesy and respect. From the outset of this litigation, he has frequently failed to address me by my proper title, opting instead for a dismissive, informal approach. He consistently neglects to include greetings or any polite language in his emails, treating my participation in this case with an undue lack of professionalism. This behavior is evident in several communications, where he fails to greet me or acknowledge my role as the opposing party, reflecting a broader pattern of disrespect. Exhibit 8.  I initially made a conscious effort to address him respectfully, using "Mr. Liebrader," as I believe it is the correct course of action regardless of our adversarial position. I also took the time to email him about my concerns regarding his lack of basic politeness. Exhibit 8.  However, despite my attempt to address this issue in good faith, he failed to comply and continued to disregard basic etiquette by not greeting me or my position. Ex of Exhibit 8, 9, 10 among other emails. The lack of greetings and his dismissive tone suggest that he sees me as inferior, which is unacceptable. I am not an animal, and each party involved in a legal matter deserves to be treated with respect, regardless of the nature of the dispute.On September 10, 2024, the judge, in her order (ECF 62), emphasized the duty of fairness required under the Nevada Rules of Professional Conduct, specifically Rule 3.4, which obligates attorneys to act fairly toward opposing parties. The court further noted that "[a]ll attorneys licensed to practice law in Nevada are sworn to uphold the ethical standards of conduct adopted by the Supreme Court of Nevada. Thes standards are listed in the Nevada Rules of Professional Conduct 1.1 through 8.5 and are enforced by the State Bar of Nevada. Any attorney who violates these ethical standards is subject to discipline" (Ethics FAQs – State Bar of Nevada). Despite this clear directive, Mr. Liebrader has persisted in his  im-proper conduct.Counsel for the Defendants has been reminded of these Rules, and his failure to maintain respectful and professional conduct could be seen as a violation of these ethical standards.Mr. Liebrader's communications consistently reflect unprofessional and dismissive behavior, including imposing tight deadlines for me to meet and confer, as if he were the only party with a demanding schedule, disregarding my own time constraints and health issues, along with a lack of basic courtesies misrepresentation of my actions, and an overall failure to engage respectfully in the legal process. (Exhibits 3, 4, 5 and 8, 9, Exhibit 11, 12 and 13).

**2. Legal Standards and Case Law**

The above emails and exhibits reflect Mr. Liebrader's consistent disregard for professional civility, which is not just an issue of personal conduct but one of legal propriety. The following legal principles and case law reinforce the importance of maintaining  respectful and professional conduct in legal proceedings: a.Professionalism in Communication: In the case of Miller v. Poretti (2010), the court emphasized the importance of professionnalism in all written communications within the legal process. Disrespect and improper behavior can undermine the integrity of the proceedings and reflect poorly on the offending party. b.Civil Conduct and the Ethical Obligations of Lawyers: Under ABA Model Rule 4.4(a), lawyers are prohibited from engaging in  conduct that has no substantial purpose other than to embarrass, delay, or burden a third person. Mr. Liebrader's attempts to

pressure me and misrepresent my actions could be construed as tactics to delay the case and embarrass me.

c. The Duty to Treat All Parties with Respect: In Graham v. Nyquist (1974), the court stressed that all parties involved in legal matters, regardless of their role or the nature of the dispute, must be treated with dignity and respect. Failing to acknowledge an opposing party's position or making baseless accusations diminishes the respect afforded to each party. The consistent lack of civility in Mr. Liebrader's communications suggests an effort to intimidate and undermine my position, using disrespect and distortion to pressure me into unfavorable decisions. This conduct should not be tolerated in any legal proceeding and must be addressed to maintain the fairness of the process.

**II. Insults and Offensive Remarks**

**1. Inflammatory and Unprofessional Conduct by Opposing Counsel: A Violation of Legal Ethics**

Mr. Liebrader insulted me with offensive and inflammatory statements in his emails (Exhibit 5-2, Exhibit 9) and in his motion/ reply (ECF 74). His language and characterization of my actions are not only unprofessional but also deeply disrespectful, crossing the line of what is acceptable in legal discourse.In an email dated August 21, 2024 (Exhibit 5-2), Mr. Liebrader stated:*"It seems more important for you to create a false narrative for the Judge than to put aside your animosity and discuss the case.*

"He further accused me of engaging in "cunning, underhanded gamesmanship" and described my actions as "bad faith conduct" that was "truly disgraceful" and "sickening to observe." These remarks were made despite my consistent efforts to follow the rules and engage in a constructive dialogue. It is clear from these words that Mr. Liebrader's conduct goes far beyond professional disagreement and into personal insults. His language attempts to undermine my integrity and motives, accusing me of creating a"false narrative" for the court when, in fact, I merely followed procedures and made reasonable requests for clarification. His words were not intended to address the issues in the case but to belittle and attack me personally. Mr. Liebrader escalated his insults further by referencing other lawsuits and stating: *"The four other lawsuits you filed against your former friend. It is truly disgraceful behavior, and it is sickening to observe."* What is particularly troubling is that Mr. Liebrader admitted that his actions are influenced by personal feelings, writing: *"Nevertheless, I am willing to put aside any personal feelings I have about you and your conduct."* This statement reveals that Mr. Liebrader has been acting with personal animosity, which has no place in these proceedings. His acknowledgment that he holds personal feelings against me confirms what I had already suspected early in the case when he attempted to prevent me from receiving an extension to file a response.In his email dated September 25, 2024 (Exhibit 9), Mr. Liebrader arrogantly stated, "Besides, it is clear that you are having someone else do it for you [motions, discovery plan, etc.], probably the same person sending these emails," accompanied by an emoticon. This dismissive and unprofessional remark is not only demeaning but also undermines my efforts as a pro se litigant, implying that I am not the author of my filings or emails. Such behavior is unbecoming of counsel, as it seeks to diminish my involvement and commitment to representing myself, further highlighting Mr. Liebrader's lack of respect for the judicial process and ethical standards. Mr. Liebrader's conduct demonstrates that he is not merely defending his clients but is also allowing personal

3

animosity to dictate his actions, which is wholly unacceptable for a legal professional. Personal feelings should play no role in this process; the court should rely solely on facts, evidence, and the principles of law. His use of inflammatory and insulting language not only undermines my ability to litigate fairly but also tarnishes the dignity of these proceedings.

**2.Inflammatory Remarks in ECF 74**

In his reply, which I never received (ECF 74), Mr. Liebrader stated: *"It is a sickening snapshot into the mindset of the Plaintiff, who is bent on revenge over a $2,000 dispute."* First, I must clarify that the disputes across the jurisdictions at hand are not about a mere $2,000, as Mr. Liebrader mischaracterizes. These matters involve complex legal claims in different juridictions, including copyright infringement, unpaid debts, fraud, misrepresentation, and emotional distress—issues far more significant than a simple financial disagreement. His reduction of these serious allegations to a trivial sum is not only inaccurate but also offensive and dismissive of the harm I have endured. Furthermore, I have never, in any of my communications, referred to Mr. Liebrader as a "liar" or made similar accusatory statements, despite the numerous inaccuracies in his motions and filings. His resort to personal insults and derogatory language demonstrates a lack of professionalism and civility, qualities that are expected from all legal practitioners.As a litigant, I am entitled to respect and professionalism from opposing counsel. Mr. Liebrader's conduct falls far below the standards expected of an attorney. His role is to advocate for his client within the bounds of ethics and legal decorum—not to insult me or make disparaging remarks about my character, motives, or the substance of my case. His actions reflect a troubling personal vendetta rather than a focus on the facts and legal issues at hand.

**a.  Mischaracterizing the different Cases**

Mr. Liebrader's comments also reflect a broader attempt to frame me as an antagonist while portraying Mrs. Souily as a victim What was I supposed to do? Allow her to continue exploiting people and their resources without accountability? I am not the only victim of her actions, and the facts do not support the narrative he is attempting to construct. Instead of addressing the issues at the core of this case, Mr. Liebrader has resorted to inflammatory rhetoric that seeks to reverse the problem entirely. His comments ignore critical facts, including: **Who lied to gain benefits in the first place? Who misrepresented their personal status and past for personal and business advantage? Who failed to repay the money they agreed to refund?**

I did none of these things. The person responsible for these actions is Mrs. Souily. Mr. Liebrader's remarks disregard these realities, attempting instead to deflect attention from his client's behavior and shift the blame onto me through unfounded, unprofessional attacks.

**b.  The Right to Seek Justice**

Such remarks are not only unprofessional but have no place in legal discourse. I have every right to seek justice and accounta-bility for the harm caused by Mrs. Souily's actions. These lawsuits are not born out of "animosity" or "revenge," as Mr. Liebrader claims, but are grounded in valid legal claims arising from her fraudulent conduct, misrepresentations, and exploita-tion of my resources. Mr. Liebrader's language and tactics serve no purpose other than to intimidate and demean me, attempt-

4

ting to overshadow the facts and distort the issues before the court. I respectfully request that the court consider these actions as a breach of professional conduct and as an impediment to fair and objective proceedings.

**2. Violation of Legal and Ethical Standards by Opposing Counsel**

Attorneys are bound by ethical codes that emphasize the importance of civility, professionalism, and respect in all legal proceedings. Mr. Liebrader's conduct, as reflected in his language and actions, not only violates these principles but also undermines the integrity of the legal process. Such conduct has no place in legal discourse.

**-Legal Standards and Case Law**

**a. Professionalism in Legal Communications:**
Attorneys must treat all parties fairly and respectfully, as required by the Nevada Rules of Professional Conduct,3.4. Fairness to opposing parties is a fundamental duty. Mr. Liebrader's inflammatory statements, such as describing my behavior as "truly disgraceful" and "sickening to observe," directly violate this standard and demonstrate a failure to uphold the professionalism expected of attorneys.

**b. Unprofessional Conduct:**
Under the American Bar Association's Model Rules of Professional Conduct 4.4(a), attorneys are prohibited from using language that serves no legitimate legal purpose but instead seeks to embarrass, harass, or burden a party. Mr. Liebrader's insults and accusations are aimed at demeaning and undermining me personally, rather than contributing to a reasoned legal argument based on facts and law.

**c. Court's Reminder of Ethical Obligations:**
On September 10, 2024, this Court reminded counsel of their duties under the Nevada Rules of Professional Conduct, emphasizing the duty of fairness to opposing parties as set forth in Rule 3.4. The Court highlighted the importance of adhering to these ethical standards and warned that any attorney who violates these rules is subject to discipline. Mr. Liebrader's actions clearly fall short of these standards by focusing on personal attacks and inflammatory language rather than addressing the legal merits of the case. **Relevant Case Law:-In re Coe**, 903 P.2d 573 (Nev. 1995): The Nevada Supreme Court stressed the importance of civility and professionalism in attorney communications, particularly when dealing with opposing parties. Personal attacks and inflammatory language—such as accusations of "bad faith conduct" and "cunning gamesmanship" —undermine the legal process and contravene these standards.

**-Federal Rule of Civil Procedure 11(b):** This rule mandates that claims and legal contentions in litigation must be based on facts and law. Making baseless or false accusations violates this rule and can result in sanctions.

**-Chambers v. NASCO, Inc.,** 501 U.S. 32 (1991) **-Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980) In summary, Mr. Liebrader's conduct not only falls short of the ethical standards required of attorneys but also undermines the integrity of the legal process. His use of personal attacks, inflammatory language, and baseless accusations is both unprofessional and unacceptable, and it violates the fundamental duty of fairness expected from legal practitioners.

**III. Intimidation and Unwarranted Accusations**

**1. Threats of Legal Action**

Mr. Liebrader's behavior exemplifies an improper use of threats to manipulate and pressure me in ongoing litigation. His statements, such as the one sent via email on Saturday, September 7 ( Exhibit 1):"You don't have a copyright claim. You have a breach of contract claim, which you lost when you failed to appear. We will be amending our motion to dismiss to update the court, and seeking sanctions against you for your abuse of process and harassment."reflect an attempt to unilaterally dismiss my claims and preemptively determine their validity as though he were the adjudicator. These statements go beyond zealous representation, constituting an inappropriate exertion of influence through legal threats aimed at intimidating me.

**2. Attempts to Control the Case and Accusations from Mr. Liebrader**

After I submitted a notice regarding Mr. Liebrader's behavior, he attempted to intimidate me through an email accusing me of fraud by omission. (Exhibit 7) This accusation came after he unilaterally sent his own discovery plan, (exhibit5-3, exhibit 6 and ECF 51 and 53) despite my intention to correct the joint discovery plan based on his perspective. Instead of discussing the matter reasonably, he chose to send me an email in which he alleged that I had committed fraud by omitting certain information, simply because I had included evidence that I believed was relevant to the notice. Importantly, I did not alter any of the facts but simply presented evidence that I deemed crucial. Yet, Mr. Liebrader seemed more focused on discrediting my actions rather than addressing the actual content of the case. His response was not only misleading but also an attempt to intimidate me and detract me from the legitimate concerns I raised about the discovery process.

In the correspondence dated Monday, August 26, just after I wrote the notice against regarding conduct of attorney Mr. Liebrader ECF 54, he accused me of misleading the court and threatened to report these allegations to the judge: "Your latest filings deliberately omit several emails from me as part of the narrative where I attempted to reach an agreement with you on the discovery report, but you stonewalled, which led to an impasse. You have therefore misled the Judge in an attempt to gain an advantage in this litigation. I will certainly bring this to her attention." Rather than adhering to established procedural rules, these communications illustrate attempts to dictate the litigation process in his favor while undermining my position. Such actions contradict the principles of fairness and impartiality in legal proceedings, as outlined in ECF 83, pages 4–5, 10–11. Mr. Liebrader's role as an attorney is to advocate for his client's interests within the bounds of professional ethics and respect. His failure to do so has not only tarnished the dignity of these proceedings but has also caused unnecessary harm and stress to me as a litigant. Counsel's baseless accusations of fraud without any evidentiary support violate procedural rules and the ethical obligation to act with candor and diligence. Such behavior wastes judicial resources, delays proceedings, and constitutes bad faith litigation.

**3. Misleading Assertions of Procedural Requirements**

On August 21, 2024, Mr. Liebrader misrepresented the procedural requirements of this case by stating, "You are refusing to

discuss this on the phone as the court requires." He further threatened, "I will proceed accordingly." Exhibit 5 and 5-1. These assertions are false, as there is no law or rule that mandates the parties to meet and confer over the phone for the Rule 26 scheduling call. By claiming otherwise, Mr. Liebrader is creating a false procedural requirement, misleading both me and the court. His actions appear aimed at pressuring me into complying with his own interpretation of procedural rules, rather than respecting the legitimate procedural framework that governs this litigation.

Mr. Liebrader's failure to acknowledge and abide by the correct procedural rules, and his use of misleading statements about procedural requirements, is yet another example of his attempts to manipulate the case to his advantage and intimidate me.

**4.Legal Standards and Case Law**

**a. Misrepresentation of Procedural Requirements**

Attorneys must accurately represent procedural rules, as misrepresentations can undermine the fairness of the legal process. Failure to do so may constitute unethical conduct. Misleading statements about procedural rules can improperly pressure the opposing party and distort the litigation process. Nevada Rules of Professional Conduct 3.4 mandates that attorneys avoid obstructing a party's access to evidence. Additionally, Rule 3.4(b) prohibits misleading conduct directed at the tribunal. Misrepresenting procedural requirements can create an unfair advantage for one party, undermining the integrity of the judicial system.

**b. Duty of Candor and Accuracy**

Under ABA Model Rule 3.3(a), attorneys must correct false statements of law or fact presented to the tribunal. Misleading procedural rules to gain an advantage or pressure a party violates the obligation of candor and honesty before the court. Federal Rule of Civil Procedure 11(b) requires that all claims made in litigation must be grounded in law and fact. False assertions of procedural rules, particularly those designed to mislead or pressure the opposing party, violate this standard and may result in sanctions.

**c. Case Law Supporting Ethical Standards**

1. **Intimidation in Litigation**

Courts strongly disapprove of intimidation, particularly against pro se litigants, and such tactics are considered incompatible with justice and fair treatment. Attorneys must refrain from behavior that could harm the integrity of the judicial process. Lipin v. Bender, 84 N.Y.2d 562 (1994): Courts do not tolerate intimidation that undermines the judicial process. This case emphasizes that unethical behavior, including intimidation, is harmful to the legal system. Hensley v. Eckerhart, 461 U.S. 424 (1983): Pro se litigants must be treated fairly and equitably, without intimidation. Courts are required to ensure that no party faces undue pressure or manipulation.United States v. Clarkson, 567 F.2d 270 (4th Cir. 1977): Litigants have a right to proceed without fear of intimidation. The court reaffirmed that attorneys must not engage in tactics that threaten the fairness or dignity of the proceedings.

2. **Baseless Accusations of Fraud**

Accusations of fraud or other serious allegations like in ECF 74 ( regarding a letter sent to Mr Lefave) should be

based on factual evidence. Unfounded allegations can constitute bad faith litigation and may lead to ethical violations. Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980): Sanctions may be imposed for actions that delay proceedings or involve unjustified accusations. Holgate v. Baldwin, 425 F.3d 671 (9th Cir. 2005): Accusations of fraud must be supported by specific evidence ; making unsupported claims can result in sanctions under Rule 11.

**d. Misleading Assertions of Procedural Requirements**

Mr. Liebrader's statement that "You are refusing to discuss this on the phone as the court requires" is false. There is no rule or law requiring parties to confer by phone for the Rule 26 scheduling call under the Federal Rules of Civil Procedure or local rules. Rule 26(f) only requires parties to meet and confer does not specifically mandate a phone call. Mr. Liebrader's statement creates a false procedural requirement and pressures me to comply with his interpretation of the process. This conduct misrepresents the court's expectations and attempts to manipulate the proceedings. Such actions violate the ABA Model Rule 3.3 and Federal Rule 11(b), as they mislead both me and the court by asserting non-existent procedural requirements.

**1.Legal Mechanism to Address Misconduct**

-Federal Rules and Statutory Authority Federal Rule of Civil Procedure 11(b): Legal claims must be grounded in law and fact. Attorneys who file motions or assertionsbased on baseless or unsupported allegations are in violation of this rule and subject to sanctions. Rule 11 requires a reasonable inquiry and factual support for all claims. Misleading assertions may lead to penalties, which are designed to deter improper conduct and uphold fairness.This legal framework ensures the integrity of the judicial process and discourages tactics that unnecessarily burden the court or opposing parties. Sanctions under Rule 11 can include fines and disciplinary measures,aimed at preserving fairness and preventing the abuse of the litigation process. Intimidation tactics, particularly against pro se litigants, and baseless accusations violate both ethical and procedural standards. Such behavior not only wastes judicial resources but also creates undue stress for the parties involved. Attorneys who engage in these improper tactics undermine the integrity of the legal process and may face sanctions, including fines or professional discipline. Upholding ethical standards is essential to ensuring that litigation is fair and respectful of the judicial process.

**III.  Failure to Respond to Queries and Lack of Cooperation**

Maintaining clear and timely communication is a fundamental obligation in litigation. Courts have consistently held that attorneys owe a duty of professionalism and good faith communication not only to their clients but also to opposing parties. For example, in *In re Marriage of Egedi*, 69 Cal. App. 4th 1100 (1999), the court emphasized the importance of cooperation between opposing counsel to promote the efficient resolution of disputes. Similarly, the Federal Rules of Civil Procedure require candor and cooperation under **Rule 1**, which states that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Despite these legal standards, I experienced repeated failures by Mr. Liebrader to respond to critical inquiries.

Below, I detail these instances, referencing my **Opposition to Motion to Strike (ECF 83, pages 4-5)**.

**1. Unresponsiveness Regarding Dropbox Link**

During the discovery process, on September 25, 2024, Exhibit 10, Mr. Liebrader sent me a Dropbox link containing documents purportedly related to the case. However, he failed to explain the purpose of these materials or provide any guidance on how I was supposed to utilize them. Confused by the lack of context, I immediately replied: *"What do you want me to do with that?"* Despite this direct inquiry, I received no response from him. At the time, I was working on the second proposed discovery plan, where Mr. Liebrader sought a stay for discovery, integrating both my contributions and his own. I did not understand why, during our conversation regarding the joint proposed discovery plan for 1 Day in Las Vegas, he suddenly sent me a Dropbox link. My question was legitimate, yet Mr. Liebrader chose not to answer. His failure to clarify the purpose of the Dropbox link left me uncertain about its relevance, causing unnecessary delays and confusion. Instead of addressing my inquiry, Mr. Liebrader proceeded to file a reply to his motion (ECF 74) without notifying me of the filing by mail or email, as he had consistently done in the past. This was particularly problematic because I do not receive automatic notifications from PACER when filings are made, unlike the counsel. While Mr. Liebrader appeared to disregard the importance of ensuring I was informed of his filings, he curiously did not forget to send me notice of the court's most recent order. (Exhibit 87). This lack of cooperation was in direct conflict with **Rule 26(f)**, which requires parties to cooperate in developing a discovery plan that is clear and effective. Mr. Liebrader's failure to cooperate in developing a discovery plan that is clear and effective further undermines the integrity of this case. Under Rule 26(a)(1) of the Federal Rules of Civil Procedure, I, as well as the Defendant, are obligated to provide clear and meaningful disclosure of evidence to facilitate the discovery process. By failing to clarify the purpose of the new documents filed in the Dropbox link, Mr. Liebrader effectively undermined this rule, causing unnecessary confusion and hindering the discovery process. Furthermore, he has never sent me any court orders by email before the last order ECF 87. I believe this inconsistency is not a mere oversight but a deliberate tactic designed to obstruct my ability to respond effectively and participate fully in these proceedings. Defendant's counsel's failure to clarify the purpose of the Dropbox link violates the cooperative obligations under Rule 26(f) and the disclosure requirements of Rule 26(a)(1). The lack of a response caused unnecessary confusion and delays in the discovery process. Additionally, the inconsistency in communication—failing to notify me of filings while selectively sending notice of court order—raises concerns about Defendant's counsel's good faith in ensuring that I am adequately informed and able to participate in these proceedings. These actions are part of a broader pattern that has hindered the case and made it more difficult to litigate effectively.

**A.    Legal Standards**

Legal standards governing discovery and communication in litigation emphasize the need for cooperation, clarity, and diligence to ensure a fair and efficient process. These rules and ethical guidelines aim to avoid delays, confusion, and prejudice, all of

which can impede the just resolution of a case. **a.**Federal Rule of Civil Procedure 26(f):Requires parties to cooperate in developing a clear and effective discovery plan. Sending documents without explanation undermines this obligation and disrupts the discovery process. **b.**Federal Rule of Civil Procedure 26(a)(1):Obligates parties to provide disclosures that are clear and meaningful, facilitating the discovery process and avoiding unnecessary confusion or delays.**c.**Federal Rule of Civil Procedure 1: Mandates that the rules be construed to secure the "just, speedy, and inexpensive determination" of every action. A failure to provide clear communication conflicts with this purpose. -Model Rules of Professional Conduct: Rule 3.4(d): Prohibits lawyers from failing to make a reasonably diligent effort to comply with discovery obligations.Rule 8.4(d): Prohibits conduct prejudicial to the administration of justice, including evasive or obstructive actions.

**B. Case Law**

Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir. 2002): Held that discovery disclosures must be clear and meaningful to ensure effective litigation. Sali v. Corona Regional Med. Ctr., 884 F.3d 1218 (9th Cir. 2018):Affirmed that discovery is a cooperative process, and uncooperative or unclear actions by one party undermine fairness and efficiency. Phelps v. McClellan, 30 F.3d 658 (6th Cir. 1994): Found that inconsistent communication patterns by counsel can hinder the opposing party's ability to participate effectively and indicate bad faith.

**2. Silence on Defendant's Service Status**

On October 5, 2024, Mr. Liebrader sent me an email with an attached motion to dismiss filed on behalf of Mrs.Souily. In reply, I confirmed receipt and inquired, "Did Mrs. Souily have been served?" meaning to ask if she had been served. Exhibit 11. This inquiry arose due to prior confusion surrounding the acceptance of service for Mrs. Souily. The procedural history is as follows On July 3 and 10, 2024, ECF 19 and 22, I filed motions for alternative service after my initial efforts to serve Mrs. Souily were unsuccessful. Initially, the court denied my motion for alternative service in ECF 21, citing insufficient justification at that time. Subsequently, in ECF 40, the court issued an order stating: *"The Court is inclined to allow alternative service to proceed. Before doing so, the Court, through this Order, requires the following: A courtesy copy of the Complaint (ECF No. 7), the Court's Amended  Screening Order (ECF No. 8), and Summons issued for Souily-LeFave (ECF No. 9 at [1-2]) are hereby provided to counsel for Around Vegas LLC, David Liebrader, through the Court's CM/ECF system. Mr. Liebrader must file a status report with the Court stating whether he is authorized to accept service and does accept service on behalf of Defendant Souily-LeFave. Status Report due by 8/12/2024."*

On August 12, 2024, Mr. Liebrader filed ECF 48, confirming that he was authorized to accept service on behalf of Mrs. Souily and did, in fact, accept service.Despite this confirmation, uncertainties regarding the service status persisted. This confusion was compounded by the earlier denial of alternative service and the subsequent acceptance through counsel. It remained unclear whether Mrs. Souily could definitively be considered served following ECF 48, as subsequent filings and motions appeared

10

to treat her as not yet fully served.In particular, Mr. Liebrader's later statement in ECF 53 (August 23, 2024) contradicted his earlier acceptance of service in ECF 48. In ECF 53, he stated:*"For Defendant Assia Souily LeFave, who has not yet been served, the Parties will exchange disclosures within 14 days of the date Ms. Souily LeFave files her Answer, provided these disclosures have not already been exchanged for Around Vegas LLC."* This contradiction prompted my question: *Did Mrs. Souily have been served?* This question was critical, as the service status directly impacted on the validity of the motion. Despite the importance of this clarification, Mr. Liebrader did not respond. Exhibit 11.  His silence not only compounded the procedural confusion but also undermined my ability as a pro se litigant to address these issues effectively. His failure to clarify violated his duty under Rule 1 of the Federal Rules of Civil Procedure, which emphasizes the just, speedy, and inexpensive resolution of cases. Furthermore, Rule 4(l) requires clarity and proof of service to ensure the proper administration of justice. This question was crucial because the status of service directly impacted the motion's validity and the opposing party's ability to respond appropriately. Again, Mr. Liebrader failed to reply, leaving me without guidance or confirmation on a key procedural matter.

**a.Impact of Unresponsiveness**

Courts have repeatedly emphasized that the failure to engage in clear communication with opposing parties can obstruct the litigation process. In Sentry Select Ins. Co. v. Treadwell, 734 F. App'x 739, 743 (11th Cir. 2018), the court criticized counsel's failure to address procedural ambiguities, stressing that such behavior undermines the principles of fairness and efficiency. Mr. Liebrader's failure to answer my question about Mrs. Souily's service status left critical procedural matters unresolved. This lack of communication compounded the confusion created by the court's evolving orders and Mr. Liebrader's filings. As a pro se litigant, I relied on his responses and emails to navigate these procedural complexities, but his refusal to engage denied me the opportunity to address these issues properly. Consequently, I was left with no choice but to write my Opposition to Dismiss the Complaint (ECF 79) to the best of my understanding, based on the information available to me. This additional burden could have been avoided with clear and timely communication from counsel for the defendant.

**b.Federal Rules of Civil Procedure and Case Law on Service of Process**

**Rule 4(l): Proof of Service** : Rule 4(l) requires that proof of service be made to the court to ensure clarity and certainty in determining whether a defendant has been properly served. Service must be properly documented to confirm the court's jurisdiction over the defendant. **Rule 1: Purpose of the Rules** : Rule 1 emphasizes that the Federal Rules of Civil Procedure are intended to secure the "just, speedy, and inexpensive determination" of every action. An attorney's failure to clarify crucial procedural matters, such as service status, undermines this principle by causing unnecessary delays and confusion. **Rule 11(b): Representations to the Court** : Attorneys must ensure that their representations to the court are consistent, accurate, and supported by evidence. A statement in filings that conflicts with earlier representations regarding service could violate this rule.

1.     **Relevant Case Law**

**Henderson v. United States, 517 U.S. 654 (1996):**The Supreme Court emphasized the importance of service of process as a

prerequisite to the court's jurisdiction. Clear and unambiguous proof of service is necessary to ensure proper administration of justice. **Jones v. Flowers, 547 U.S. 220 (2006):** The Court held that procedural fairness requires clear notice and meaningful opportunities for all parties to respond. Failure to provide clear communication about service status hinders procedural fairness. **Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999):**This case established that the service of process marks the beginning of a party's obligation to respond. Any ambiguity or contradiction regarding service disrupts the opposing party's ability to understand and respond to procedural obligations.**Cheek v. Doe, 111 F. Supp. 2d 986 (N.D. Ill. 2000):**Courts have found that contradictory statements about service status can prejudice the opposing party and undermine the fairness of proceedings.

2.        Ethical and Professional Standards

**Model Rules of Professional Conduct, Rule 3.4(d):**Prohibits lawyers from failing to make a reasonably diligent effort to comply with discovery and procedural obligations, including providing clear and consistent information regarding service. **Model Rules of Professional Conduct, Rule 8.4(c):**Prohibits conduct involving dishonesty,fraud, deceit, or misrepresentation. Conflicting statements regarding service status could violate this rule if they mislead the opposing party or the court.

**IV. Submitting Motions Containing Inaccuracies and False Statements**

I have faced repeated submissions from the Defendants and their counsel containing inaccuracies and false statements, significantly complicating the progress of this case. Some of the most concerning examples include:

• ECF 43 and ECF 45 : Defendant Assia Souily's declaration regarding the time of service by the Henderson constable, where she falsely claimed to be unaware of the New York case until July, despite signing documents  in June.• ECF 24 (page 1): A mischaracterization of me as a "vexatious litigant." • ECF 47 (page 3): Defendant's attorney inaccurately asserted that the Henderson court would rule on the rights to the pictures, a claim that misrepresents the jurisdictional limits of the small claims court.• ECF 80 (page 4) and ECF 83 : The attorney erroneously claimed that a settlement proposed in New York court was privileged, despite the conversation occurring in open court, with members of the public present. • ECF 51 (page 2) and ECF 53: The attorney inaccurately asserted that discovery had already been conducted, despite this not being the case.

• ECF 65 (page 2): The attorney wrongly claimed that evidence would be exchanged in the New York proceedings, failing to acknowledge that only I could present evidence during the inquest.

The inaccuracies in the Defendant's filings, particularly Mr. Liebrader's misrepresentations regarding the discovery process and evidence in both the Henderson and New York matters, have compelled me to spend significant time and effort correcting the  record. This has resulted in an extensive number of motions and filings (ECF 34, 35, 36, 45, 46, 47, 50, 54, 58, 63, 66, 71, 73, 78, 79, 83), with each submission averaging over 10 pages to adequately defend myself. From the outset, I warned the Court of the potential falsehoods raised by the Defendants, as outlined in my initial complaint (ECF 1 and 7, page 8). Furthermore, I

filed a formal notice of falsehood (ECF 45) to address these inaccuracies.These misleading statements have placed an undue burden on me, especially as a pro se litigant, diverting my time and resources away from advancing my claims and undermining the integrity of the proceedings. Specifically, Mr. Liebrader's false assertion that discovery had already been conducted in the Henderson and New York matters led the Court, relying on this misleading information, to order me to respond to Defendant's Rule 26(f) Report (ECF 52). This report suggested that I was involved in closely related matters in other courts and sought clarification on the potential duplicative nature of discoveryand the impact of the Henderson case on the current matter. The Court's order was based on the incorrect premise presented by Mr. Liebrader, which misrepresented the facts. Mr. Liebrader's conduct aligns with a broader pattern of trying to pressure me into presenting the same evidence across multiple proceedings. His false statements about discovery in Henderson and New York misled the Court into questioning the duplicative nature of discovery. In addition, Mr. Liebrader suggested that I use the same evidence in both the Henderson Justice Court trial and the federal court case. I refused, clarifying that the evidence in each proceeding is distinct and should be treated separately. Then, suddenly, Mr. Liebrader filed a unilateral discovery plan (Exhibit 6 and ECF 51 and 53 ), bypassing my position on how evidence should be managed across the different proceedings. Exhibit 5-3. His false statements, combined with his attempts to pressure me into presenting the same evidence, demonstrate a pattern of behavior aimed at consolidating evidence in a way that benefits his client, disregarding the procedural fairness of the case. This conduct has complicated the proceedings unnecessarily, leading to a stay of discovery and preventing the Court from reviewing critical evidence, particularly against Mrs. Souily.

**1. Defendants' Counsel's Misrepresentations and Lack of Diligence**

The behavior of Defendants' attorney has exacerbated the challenges in this case, as detailed in my filing at ECF 83, pages 12-15. This filing outlines the attorney's role in perpetuating delays and inaccuracies, which have compounded my burdens. Beyond submitting false statements, the attorney has exhibited a persistent lack of cooperation and unresponsiveness, further complicating the litigation process. The attorney's motion to dismiss was based on claims of failure to state a claim and duplicative actions, yet it is apparent that the attorney did not fully understand the details of either the Henderson or New York cases. If the attorney lacks such a clear grasp of the issues at hand, submitting a motion to dismiss is problematic and undermines the Defendants' position. Additionally, the attorney's comments about the New York case were inaccurate. For instance, the attorney suggested that an inquest scheduled within 60 days would involve evidence exchange similar to Henderson, despite no such exchange being planned (ECF 65, page 2). In truth, the inquest is a proceeding to determine damages only, as liability has already been established due to the Defendants' failure to respond within the required timeframe.By failing to accurately address the inquest's details or the exchange of evidence, the attorney demonstrated a lack of familiarity with the case specifics. Furthermore, the attorney's amended motion to dismiss ECF merely referenced the index number without adequately addressing the nature of the cases or their filing dates, in stark contrast to me, as I have provided comprehensive exhibits

with detailed dates and case-specific information.

**2.    Inaccurate Assertions Regarding Settlement and Privilege**

The attorney also filed a motion to strike (ECF 80) aimed at silencing me. In these motions, the attorney inaccurately asserted that a settlement proposed by Mrs. Souily to drop the New York and federal cases was privileged. This claim was false, as the settlement was made in open court during proceedings in New York on October 4, 2024. This is a serious misrepresentation. Notably, the attorney appears to have conducted no research into the developments in the New York court, yet continued to make inaccurate statements and assumptions in filings. This lack of diligence and factual inaccuracy further undermines the credibility of the Defendants' legal arguments. In conclusion, the repeated inaccuracies, misrepresentations, and lack of diligence exhibited by the Defendants' attorney have caused significant delays, unnecessary complications in this case.

This conduct has placed an undue burden on me to address and correct these issues, further complicating my efforts to pursue justice while managing my health issues.

**3.    Legal standard : Due Diligence and Research Obligations**

Attorneys are ethically and legally obligated to ensure that their statements in pleadings, motions, and other legal filings are accurate, truthful, and supported by adequate research. This duty is enshrined in the **American Bar Association Model Rules of Professional Conduct**, particularly Rule 1.1, which mandates that attorneys provide competent representation, including thorough preparation and an understanding of the relevant facts and law. Failing to fulfill this obligation not only undermines the integrity of legal proceedings but also exposes attorneys to potential sanctions or disciplinary action.

**a. Duty of Competent Representation**

Rule 1.1 of the ABA Model Rules of Professional Conduct requires lawyers to provide competent representation, which includes conducting adequate research to support any claims made in court. Inaccurate statements or unsubstantiated legal arguments violate this rule and undermine the judicial process. Specifically, the rule emphasizes the necessity for lawyers to "adequately prepare" for each matter, ensuring that the information they present is grounded in sound legal reasoning and factual support.

**b. Case Law Supporting Due Diligence and Consequences of Failure**

Several cases highlight the importance of an attorney's research and due diligence before filing motions or making statements in court: **In re Disciplinary Proceedings Against Batzli, 571 N.W.2d 877 (Wis. 1997)**: In this case, the Wisconsin Supreme Court emphasized the duty of attorneys to conduct due diligence to avoid making false or misleading statements in legal proceedings. The court disciplined an attorney who failed to adequately verify factual statements, which led to a misrepresentation in a pleading. This case underscores the critical importance of ensuring that statements made in court are based on verified facts and proper legal research. **In re Kagan, 176 P.3d 171 (Colo. 2007)**: The Colorado Supreme Court found that an attorney's failure to verify facts before making statements in court constituted professional misconduct. This failure resulted in disciplinary action against the attorney. The court stressed that attorneys must take reasonable steps to

14

verify the facts they present in legal proceedings, and failure to do so undermines the fairness of the judicial system.

**Nix v. Whiteside, 475 U.S. 157 (1986):**In this case, the U.S. Supreme Court highlighted the importance of attorneys providing truthful representations to the court. The Court noted that attorneys have a duty to conduct a reasonable inquiry into the facts before making statements or presenting evidence in court. Failing to disclose accurate facts can lead to ineffective assistance and unjust outcomes, particularly in criminal proceedings. **In re Thomas, 482 B.R. 804 (Bankr. S.D. Ohio 2012):**The court in this case held that attorneys must conduct reasonable inquiries into the facts and law before making representations to the court. Attorneys who make mis-statements without adequate research can be subject to sanctions or disciplinary action. The case emphasizes that improper legal research can have serious repercussions in bankruptcy proceedings.

**Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)**: The U.S. Supreme Court recognized that a court may impose sanctions for bad-faith conduct or procedural misconduct that undermines the integrity of the judicial process. In this case, the Court allo-wed for sanctions against an attorney who engaged in misconduct by submitting false statements and delaying proceedings. The case reinforces the principle that attorneys must conduct themselves with integrity and avoid actions that distort the truth in legal proceedings.

**c. Consequences for Failing to Conduct Proper Research**

When attorneys fail to research relevant facts or law, they not only risk professional misconduct but also expose their clients to unnecessary risks. Inaccurate motions or pleadings can lead to delays, wasted resources, and ultimately harm the party's legal position. Courts have the authority to impose sanctions under **Federal Rule of Civil Procedure 11** and other local rules, which require attorneys to ensure that their motions are grounded in fact and law. For example, Rule 11 sanctions may include fines, orders to pay the opposing party's attorney's fees, or even dismissal of claims if the attorney's conduct is deemed frivo-lous or unsupported by adequate legal research. In the present case, **Mr. Liebrader**, as the defendant's attorney, had a clear obligation to conduct thorough research before filing motions and making statements in court. Had he undertaken this due diligence, he would have understood the facts and legal issues at hand, preventing the need for multiple filings containing inaccuracies. As a pro se litigant, I have already faced significant challenges navigating this case, and Mr. Liebrader's failure to properly research the case has further compounded my burden. His inaccurate filings have forced me to dedicate additional time and resources to correct the record, diverting valuable focus away from my health. The inaccuracies and false statements made in these motions have not only stalled the proceedings but have also impacted my life, requiring me to expend more energy than necessary to set the record straight and ensuring that the truth prevails. This has caused unnecessary stress, worsened by the fact that I am already dealing with severe health issues while trying to represent myself in a complex legal matter.Attorneys have an ethical and legal obligation to conduct diligent research and ensure the accuracy of their filings.

15

Failure to do so not only risks professional discipline but can also undermine the integrity of legal proceedings. Courts expect attorneys to act in good faith, and when inaccuracies arise, it is important to recognize that there are legal frameworks in place to address such misconduct, including the potential for sanctions or disciplinary actions. The cases discussed above illustrate that attorneys must make a reasonable effort to verify their facts and provide competent representation, which is essential for upholding fairness and justice in the legal process.

**V. Defamatory and Manipulative Actions**

**1.Defamation and Unfounded Allegations: A Response to Mr. Liebrader's Malicious Filing (ECF 74)**

In ECF 74, Mr. Liebrader filed statements about me, which included highly defamatory remarks. I was only made aware of these statements when I checked the filings in preparation for my last amended motion (ECF 89). At the time of the filing, I had not received a copy ( ECF 84) of it via email, as Mr. Liebrader failed to provide one.The court's filing notifications are not sent to me on PACER, and therefore, I was unaware of these allegations until much later. Had I been made aware of this filing, I would have addressed these false statements immediately. In his filing, Mr. Liebrader stated: "This letter, addressed to Mr. Le Fave's mother, was clearly commissioned by the Plaintiff, and sought to disrupt and destroy Ms. Souily and Mr. LaFave's marriage, even threatening Mr. LeFave with criminal prosecution." "It is a sickening snapshot into the mindset of the Plaintiff, who is bent on revenge over a $2,000 dispute." These statements are deeply defamatory, completely unfounded, and aimed at harming my reputation. Mr. Liebrader crossed a serious line with this filing. For months, I endured these types of false claims without responding, or asking for sanctions but his latest actions forced me to take a stand. I can no longer tolerate such unprofessional conduct and defamatory accusations.It is critical to understand that the reputation of Mrs. Souily is already fraught with controversy due to her behavior in the wedding industry. She has a long history of unethical actions, including stealing from people, using others, and failing to refund money owed to others. These actions have led to her creating many enemies within the wedding industry and outside. Even the media is aware of her wrongdoings, which have been reported both before and after my involvement with her. I am not the first victim of her misconduct, nor will I be the last I believe. However, it is unacceptable for Mr. Liebrader to manipulate the court and tarnish my reputation with such false and malicious statements, especially when he fails to provide any evidence to support his filing and will be unable to do so, unless the evidence is fabricated by the defendants. If I truly commissioned the letter as Mr. Liebrader claims, why did Mr. LeFave not immediately sue me for defamation, as would be expected in such a situation? Why did he wait until I filed my lawsuit in Henderson court before bringing up this accusation? This suggests that these defamatory statements have no factual basis and are simply an attempt to manipulate the court and harm my case. Does Mr. Liebrader have any proof of his allegations? Does he even know who I supposedly "commissioned" to send this letter? These are questions he has failed to address, and his statements appear to be nothing more than falsehoods aimed at discrediting me and deflecting attention from the real issues at hand. All means are fair game, even resorting to outright falsehoods. In reality, the defendants and their attorney

cannot deny Mrs. Souily's wrongdoing, so they resort to portraying me as the villain in this case. By making such false accusa-tions, Mr. Liebrader is attempting to distract from the actual misconduct and shift the focus to me. This is a manipulative tactic that serves no purpose other than to harm my reputation and further complicate an already difficult legal matter. Until proven otherwise, it is Mrs. Souily who commissions others to act on her behalf, as she did with me when she requested that I investi-gate her ex-husband and new wife out of jealousy for their success and a desire to learn how he attracted clients. Unlike Mr. Liebrader and his client Mrs. Souily, I have evidence to support my claims!. This particular filing has become the turning point for me to seek sanctions in federal court. The harm caused by Mr. Liebrader's defamatory actions cannot be ignored, and I am now forced to take steps to protect my reputation and ensure that these false statements are addressed appropriately.

2. **Case Law and Legal Precedent:**

Defamation in the context of legal proceedings is prohibited and can lead to serious consequences for the attorney responsible. The American Bar Association Model Rules of Professional Conduct, specifically Rule 8.4(g), states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice, including making defamatory statements in court filings. Lawyers have an obligation to refrain from making false or misleading statements that could dama-ge an individual's reputation, particularly when such statements are not substantiated by the facts or law. In *In re Disciplinary Proceedings Against Batzli*, 571 N.W.2d 877 (Wis. 1997), the court held that an attorney's conduct can result in disciplinary action when they make statements that are defamatory or misleading. In that case, an attorney was disciplined for making unsubstantiated statements about another lawyer, which was deemed prejudicial to the administration of justice. Similarly, in *In re Kagan*, 176 P.3d 171 (Colo. 2007), the Colorado Supreme Court imposed sanctions on an attorney who made false statements during litigation, finding that the attorney's conduct violated ethical obligations and undermined the integrity of the judicial process.

These cases underscore the serious nature of defamatory actions by attorneys in legal proceedings and demonstrate that such conduct can lead to professional discipline and sanctions. Mr. Liebrader's defamatory statements about me are not only unpro-fessional but also violate the ethical standards governing attorneys. Given the impact of these false claims on my reputation and the harm caused by his actions, I am now seeking sanctions in this court.

**VI. Failure to Follow Court Rules and Procedures**

**1.Violation of Procedural Rules: Unilateral Discovery Plan, Unauthorized Amended Motion, and Failure to Cooperate in Good Faith**

Mr. Liebrader's consistent failure to adhere to established court rules and procedures has led to unnecessary setbacks and added complexity to this case, undermining the principles of fairness and efficiency. His actions demonstrate a troubling pattern of non-compliance and selective adherence to procedural requirements. This pattern became evident when I initially contacted Mr. Liebrader to create the joint discovery plan. Instead of cooperating, he pretended not to know what I was refer-

ring to, asking me for the exact location of the document and feigning ignorance about the specific case. At the time of his email, he was—and remains—the attorney exclusively for the federal case. To excuse his lack of awareness, Mr. Liebrader claimed that I had filed too many cases against Mrs. Souily, making it difficult for him to identify the relevant case. In response, I clarified that, to my knowledge, he was only representing Mrs. Souily in the federal case. His behavior, particularly as an experienced attorney familiar with federal jurisdiction, reflects a deliberate attempt to avoid procedural obligations and adds unnecessary complications to the litigation process. Exhibit 2, exhibit 2-1 and exhibit 2-2

**a.   Double Standards in Professional Conduct : Amended Motion to Dismiss Without Permission (ECF 64, 80 & 83)**

In Mr. Liebrader's motion to strike, he opposes my amended opposition to the motion to dismiss (ECF 80) on the grounds that I did not seek his or the court's permission to file the amendment. However, this reflects a clear double standard. Mr. Liebrader, a seasoned attorney with over 30 years of experience, filed his amended motion to dismiss without seeking my permission or court approval, thereby applying a standard he himself did not follow. As an attorney with such extensive experience, he should be well aware of the rules, including the 21-day allowance under **Rule 15(a)(1) and Rule 15(a)(2)** for filing amendments as a matter of course. His actions demonstrate a calculated effort to exploit my status as a pro se litigant and my lack of familiarity with procedural nuances, while holding me to a stricter standard than he applies to himself. This inconsistency is not only unfair but also an apparent misuse of his professional expertise to gain an advantage. Additionally, the court's orders and rules apply equally to both parties, as emphasized by Judge Elayna J. Youchah in ECF 37, referencing *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, where the meet-and-confer obligations were held to be incumbent on all parties, not just the Plaintiff. Mr. Liebrader's failure to adhere to these same obligations demonstrates a disregard for the integrity of the proceedings and a strategic effort to unfairly disadvantage me.

If Mr. Liebrader can amend his filings without following proper procedures, I should be afforded the same latitude to amend mine, especially given the circumstances of this case. **Rule 15(a)(2)** of the Federal Rules of Civil Procedure requires that a party seek either consent or leave of court to amend a motion. Mr. Liebrader's filing of an amended motion to dismiss without adhering to these procedural requirements demonstrates disregard for established court protocols. In Forman v. Davis, 371 U.S. 178 (1962), the U.S. Supreme Court noted that leave to amend should be granted freely, but only after proper notice and request. Mr. Liebrader's failure to seek consent or court permission for his own actions, while later insisting that I obtain such approval, undermines the principles of fairness and the proper administration of justice.

**b. Unilateral Submission of Discovery Plan (ECF 51 & 53)**

Federal Rule of Civil Procedure Rule 26(f) requires that parties confer and jointly prepare a discovery plan. The rule is designed to ensure cooperation and minimize disputes between parties. In Cahill v. Liberty Mut. Ins. Co., 34 F.3d 1533 (9th Cir. 1994), the Ninth Circuit emphasized that joint discovery plans promote fairness by requiring all parties to engage in meaningful discussions before filing. Mr. Liebrader's unilateral filing of the discovery plan not only violated this requirement but also

misrepresented my position, causing confusion and delay.

**d. Failure to Cooperate in Good Faith (ECF 28, 30, 31, 32, 37)**

Federal Rule of Civil Procedure 37(a)(1) requires parties to meet and confer in good faith before filing a motion to compel, en-suring disputes are resolved efficiently and fairly without court intervention. Mr. Liebrader's refusal to cooperate when I re-quested an extension of time due to computer issues directly violated this rule. Rather than engaging constructively, he adop-ted a dismissive stance, causing unnecessary delays and forcing me to seek the court's assistance for issues that could have been resolved through basic communication. Legal precedents emphasize the importance of the meet-and-confer require-ment. In *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, 2013 WL 6725390 (D. Nev. Dec. 18, 2013), the court underscored that this obligation applies universally, while in *Caldwell v. 17th Judicial Dist. Court*, 205 F.3d 390 (9th Cir. 2000), the Ninth Circuit highlighted its role in ensuring fair proceedings. The court in my case also addressed Mr. Liebrader's noncompliance in its order (ECF 37), recognizing his failure to collaborate.His actions undermined Rule 37's purpose, introducing avoidable delays and increasing the burden on both myself and the court. Through simple, good-faith communication, these inefficiencies could have been prevented.

**e. Double Standards in Evidence and Pleading (ECF 57 and 80, 83)**

Mr. Liebrader's handling of evidence has been inconsistent and contrary to the principles of fair pleading. In *Cunningham v. U.S. Dep't of Justice*, 415 F.3d 647 (7th Cir. 2005), the court reaffirmed that parties should not submit evidence unrelated to the core issues of a case in order to confuse or mislead the court. Mr. Liebrader's submission of irrelevant evidence, while criticizing me for similar conduct, highlights his double standards and undermines the integrity of the pleadings (ECF 80 and 83). Furthermore, in ECF 57, Mr. Liebrader's initial disclosures were related to the 1 Day in Las Vegas event, linked to Mrs. Souily for the claim of copyright infringement. However, he included evidence that was entirely unrelated to 1 Day in Las Vegas or Around Vegas LLC, a separate entity from Mrs. Souily. This evidence included documents connected to Mr. Lefave, an indivi-dual who is not part of this federal case. Unlike Mr. Liebrader and his clients, I will present all evidence relevant to the claims of copyright infringement, fraud, and inducement, provided the Court allows me to do so, as these are the central issues of this case. In conclusion, Mr. Liebrader's repeated failure to follow established court rules and procedures has significantly im-pacted the fairness of these proceedings. These violations not only disadvantage me as a pro se litigant but also hinder the efficient resolution of this case. It is respectfully requested that the Court take these violations into consideration and ensure proper adherence to all applicable rules moving forward.

**VI. Double Standards, Silencing Tactics, and Basis for Sanctions**

**1. Unethical Litigation Tactics: Obstruction, Misrepresentation, and Silencing Efforts by Mr. Liebrader**

From the outset, Mr. Liebrader has engaged in tactics aimed at silencing and disadvantaging me, in violation of NRPC Rule 3.3 (candor toward the tribunal) and Rule 4.1 (truthfulness in statements to others). His conduct warrants sanctions under both

ethical rules and applicable case law, as it undermines the integrity of the litigation process and fairness to all parties.

**A. Obstruction of Time Extensions and Amendments**

**ECF 28**: Opposed my reasonable request for a time extension, unnecessarily complicating the process.

**ECF 80** : motion to strike opposed my request to amend my opposition to address significant developments, including Mrs. Souily's settlement in New York, which is directly relevant to the claims in this case.

**B. Mischaracterization of Open-Court Settlement**

Incorrectly asserted that the settlement made by Mrs. Souily in open court was privileged, despite the record clearly showing it was public.

**C. Request for Discovery Stay**

Knowing that I possess key evidence, Mr. Liebrader sought a stay of discovery to block my ability to present this evidence. This tactic constitutes bad faith conduct under Rule 26(g) of the Federal Rules of Civil Procedure,which requires parties and their attorneys to act reasonably and in good faith during discovery.

**D. Motion to Strike as Silencing Tactic**

Filed a motion to strike of my filings instead of addressing the merits, suppressing material information critical to my claims.ECF 80

**2.Legal Standards for Sanctions and Case Law**

From the outset, Mr. Liebrader has engaged in tactics aimed at silencing and disadvantaging me, in violation of **Nevada Rules of Professional Conduct (NRPC)** Rule 3.3 (candor toward the tribunal) and Rule 4.1 (truthfulness in statements to others). His conduct warrants sanctions under both ethical rules and applicable case law, as it undermines the integrity of the litigation process and fairness to all parties.

**a. Obstruction of Time Extensions and Amendments**

Under **Federal Rule of Civil Procedure 6(b)**, the court may extend deadlines for good cause, and it is a common practice for attorneys to cooperate with reasonable requests to extend time. In **Cameron v. E.I. DuPont de Nemours & Co.**, 222 F.3d 1331 (9th Cir. 2000), the court ruled that procedural flexibility, such as granting extensions, is necessary to ensure fairness in litigation, particularly when parties are facing legitimate challenges. However, Mr. Liebrader opposed my reasonable request for a time extension, unnecessarily complicating the process. His opposition to my request to amend my opposition to address significant developments, including Mrs. Souily's settlement in New York, represents an attempt to limit my ability to present a full and fair case.**In re Kroll**, 2015 WL 4619521 (D. Nev. Aug. 3, 2015), affirms that attorneys should not obstruct their opponent's ability to amend their pleadings where such an amendment is grounded in new and relevant information.

**b. Mischaracterization of Open-Court Settlement**

The **Nevada Rules of Professional Conduct, Rule 3.3** demands that attorneys be candid with the tribunal. Mr. Liebrader's

incorrect assertion that the settlement made by Mrs. Souily in open court was privileged, despite the record clearly showing it was public and material to the case, violates this rule. In **Wade v. Hollywood Video, Inc.,** 204 F.R.D. 34 (D. Nev. 2001), the court ruled that any statement made in open court is presumptively not privileged and must be treated as part of the public record. Mr. Liebrader's mischaracterization of this settlement undermines the integrity of the proceedings and constitutes misconduct under **NRPC 3.3**.

**c. Request for Discovery Stay**

Under **Federal Rule of Civil Procedure Rule 26(g)**, attorneys are required to act in good faith when making discovery-related motions. Mr. Liebrader's motion to stay discovery, knowing that I possess key evidence, is a clear attempt to block my ability to present this evidence. Such a tactic is in bad faith and an abuse of the discovery process. In **Gates v. Rohm & Haas Co.,** 248 F.R.D. 434 (D. Nev. 2008), the court held that the purpose of discovery is to facilitate the exchange of information and that a motion for a stay is improper when it seeks to obstruct the fair exchange of evidence. Mr. Liebrader's actions in this regard are sanctionable under Rule 26(g),as they frustrate the discovery process and hinder the pursuit of justice.

**d. Motion to Strike as Silencing Tactic**

Mr. Liebrader's motion to strike portions of my filings instead of addressing the merits of the issues at hand is another attempt to suppress material information critical to my claims. **Federal Rule of Civil Procedure Rule 12(f)** allows the court to strike material that is "redundant, immaterial, impertinent, or scandalous," but motions to strike are generally disfavored, especially when they are used as a tactic to silence a party rather than address the substance of the case. In **Whittlestone, Inc. v. Handi-Craft Co.,** 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit emphasized that motions to strike should be used sparingly and only in instances where thechallenged material is truly irrelevant. Mr. Liebrader's motion to strike constitutes an attempt to silence me by removing essential information from the record that supports my claims.

**3. Professional Standards and Ethical Violations**

**State Bar of Nevada** guidelines emphasize the importance of integrity and professionalism under the **Nevada Rules of Professional Conduct (NRPC)**, which include: **NRPC Rule 3.3 (Candor Toward the Tribunal):** Attorneys must ensure that their statements and representations to the court and opposing parties are accurate. **NRPC Rule 4.1 (Truthfulness in Statements to Others):** Attorneys must not knowingly make false statements or misrepresent facts to third parties. Case law such as **In re Conduct of Alton**, 236 P.3d 99 (Or. 2010), and **Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court**, 132 Nev. 784, underscores that misleading tactics or obstruction of opposing parties' ability to litigate is a violation of professional ethics. Attorneys are required to uphold fairness, avoiding undue influence or silencing tactics. **Mickens v. Taylor**, 535 U.S. 162 (2002), establishes that actions by attorneys that impede the fairness of a case violate fundamental principles of justice.

**VII. Emotional and Psychological Distress Caused by Counsel's Conduct**

The actions of Mr. Liebrader have not only caused unnecessary delays but have also inflicted significant emotional distress

on me. His behavior—including obstruction of the extension of time needed due to a worldwide outage damaging my computer, mischaracterization of the facts, attempts to suppress key evidence by requesting a stay of discovery, false statements from himself and his clients prompting me to write multiple motions to present the truth, lack of cooperation, defamatory statements, and personal attacks—has had a profound psychological impact on me and my family. As a result, I have been compelled to seek help from a psychologist and to take medications to cope with the immense stress and emotional toll caused by this situation. Exhibit 14 and 15. As established in **Chambers v. NASCO, Inc., 501 U.S. 32 (1991)**, and **Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)**, the court has inherent power to impose sanctions when attorney misconduct causes harm to the opposing party, including emotional and psychological distress. This Court may also consider **Federal Rule of Civil Procedure 11(b)**, which prohibits filings for improper purposes, including harassment and causing unnecessary delay, as a basis for sanctioning Mr. Liebrader. His conduct has directly led to undue emotional stress, and his actions can be classified as bad faith conduct under **Rule 26(g)** of the Federal Rules, as well as a violation of ethical duties set forth in **NRPC Rule 3.3** (candor toward the tribunal) and **Rule 4.1** (truthfulness in statements to others).Courts have long held that when a party's conduct, especially that of an attorney, leads to emotional distress, sanctions may be appropriate. In **Cohen v. Leventhal, 2006 WL 2166340 (S.D. Fla. 2006)**, the court acknowledged that improper conduct by an attorney can cause emotional distress, further supporting the imposition of sanctions when such harm is evident. Moreover, in **Doe v. Abbott Labs, Inc., 571 F.3d 930 (9th Cir. 2009)**, the court recognized that actions taken in bad faith, particularly by counsel, which cause emotional distress, are grounds for sanctions.

**VIII. CONTINUING VIOLATIONS, Improper Consolidations (ECF Nos. 41, 97 and 107)**

Defendant's counsel improperly consolidated motions, violating Local Rule IC 2-2(b), which requires separate filings for each motion. Despite the Clerk's instructions (ECF 42), ECF 97 and ECF 107 still contained combined motions, causing unnecessary confusion for both Plaintiff and the Court. In contrast, Plaintiff complied with the Court's rules by filing motions separately (ECF 104 and ECF 105). Despite notices and warnings (ECF 42, ECF 98), Defendant's counsel ignored filing requirements. This violation complicates issue resolution and delays progress. Attorney failed to follow Court's directives (ECF 97 And 107).

**Legal Argument Violation of Local Rule IC 2-2(b):** By consolidating motions into single filings, counsel violated Local Rule IC 2-2(b). Despite being instructed to refile separately, Attorney persisted in combining motions (ECF 41, 97, 107)**. Impact on Judicial Efficiency:** Improper consolidations waste court resources and delay resolution. In *Does v. District of Columbia*, 448 F. Supp. 2d 137 (D.D.C. 2006), the court held that procedural violations disrupt judicial proceedings. Similarly, in *Kantner Ingredients v. All American Dairy Products*, 2007 U.S. Dist. LEXIS 91355 (D. Neb. 2007), sanctions were imposed for improper filings.

Failure to Comply with Court Orders: Attorney disregarded Court orders (ECF 42, 98), warranting sanctions. In *In re Stratosphere Corp. Securities Litig.*, 182 F.R.D. 614 (D. Nev. 1998), repeated violations led to court-imposed sanctions.

**Repeated Violations and Need for Sanctions:** Defendant's ongoing misconduct obstructs progress. In *Liebowitz v. Bandshell Artist Management*, No. 20-2304 (2d Cir. 2021), the court sanctioned repeated procedural abuses to uphold judicial integrity.

**Conclusion**

While Mr. Liebrader represents the defendants, this does not grant him the authority to make defamatory or false statements, neglect his duty to conduct proper research, speak with disrespect, or disregard procedures without facing consequences.He should be held accountable for his actions just as the defendants are. In his motion (ECF 74), Mr. Liebrader not only reflects the thoughts of his clients but also his own aggressive tactics, mirroring the same tone and assertions made in an email dated on the August 21, 2024  He stated it was "sickening to observe," and "a sickening snap-shot into the mindset of the Plaintiff," yet his conduct in ECF 74 clearly crossed the line. Given the significant emotional distress and psychological toll his actions have caused, coupled with his repeated violations of both procedural rules and ethical obligations, I respectfully request that theCourt impose sanctions against him. His actions have not only undermined the fairness of these proceedings but have also caused substantial harm to my mental and emotional well-being. It is imperative that the Court take remedial action to restore integrity and fairness to this case. The statements made in his filing, along with his repeated attempts to manipulate the case through inaccuracies, have not only harmed my reputation but also interfered with my ability to pursue this case fairly. I haveexperienced his actions as a form of harassment, and such behavior must be addressed. Mr. Liebrader's conduct has disrupted the legal process and violated the basic professional standards expected of an attorney.This type of behavior is inappropriate and disruptive to the fairness and integrity of these proceedings and warrants legal action to restore that balance. Throughout the case, Mr. Liebrader's arrogance has been evident. As an experienced attorney, he should knowbetter than to engage in such behavior. His actions reflect a blatant disregard for the ethical standards that all attorneys are required to uphold. While others may have overlooked his conduct, I refuse to stay silent in the face of suchblatant disregard for the legal process. I am patient and willing to endure much, but there comes a point when a person crosses the line too many times. When that happens, I believe it  is crucial to address such conduct, particularly when it disrupts the legal process as Mr. Liebrader's actions have. Mr. Liebrader's conduct further demonstrates a troubling lack of professionalism. Despite the ongoing proceedings, he never sent any results or copies of court orders until last week when I requested court-appointed legal assistance, which was denied. Immediately following this denial, he hastily sent me the order, seemingly to highlight his perceived success. This timing raises questions about his intentions—was this a deliberate attempt to send me a message, flaunt his success, or undermine my case? While I have encountered various attorneys in my time as a litigant, I have never felt as disrespected as I have by Mr. Liebrader. As detailed in my Opposition to

Motion to Strike (ECF 83), seeking victory in a lawsuit is one thing, but repeatedly presenting inaccuracies to manipulate the case's outcome is another. Mr. Liebrader's conduct has personally violated my trust in the legal system, and I respectfully request that the Court take notice of his behavior and remind him of his professional obligations. These instances have severely impacted my ability to pursue my case fairly and efficiently.I further request that appropriate sanctions or corrective measures be implemented to ensure fairness in these proceedings. This behavior is entirely inappropriate and should not be tolerated in the legal system.Mr. Liebrader's actions reflect a pattern of deliberate disregard for both court rules and professional standards.From the outset, he opposed my emergency motion, while the judge ruled that he himself had failed to adhere to procedural rules. ECF 37. He also feigned ignorance of the court order for discovery, which resulted in unnecessary delays and confusion. He made defamatory claims, including labeling me a "vexatious litigant" without any legal basis and asserting that I do not have a valid copyright case, despite clear evidence to the contrary. Furthermore, he disregarded the joint discovery process. While I was expected to submit a draft, Mr. Liebrader filed documents  unilaterally, including inaccurate statements about discovery in both Henderson and New York, knowing them to be false. His amended motion to dismisswas filed without my consent or court permission, yet he later sought to strike my own amended motion on the grounds that I had not requested permission, demonstrating a clear double standard.Mr. Liebrader's conduct has been dismissive and disrespectful, not only in legal filings but also in his communications with me. He has treated me with contempt as a pro se litigant, undermining my ability to present my case fairly. His actions, including issuing orders as if he were the judge, indicate a deeper disregard for legal norms and my rights in this process. These actions have caused undue stress and harm, and I respectfully request that the court impose sanctions for this unprofessional conduct.Should Mr. Liebrader claim that I have no health issues or that I fabricated everything to "mislead the Judge in an attempt to gain an advantage," I would point out that it is, in fact, the attorney and clients who have misled the Judge and the Court through their false statements and inaccuracies in their filings.**In light of the repeated disregard for court orders, false statements, and unethical conduct displayed by Mr. Liebrader throughout these proceedings, I respectfully request that the Court impose appropriate sanctions pursuant to Rule 11, Rule 26(g), Rule 37, and Rule 5 of the Federal Rules of Civil Procedure.** His actions have not only undermined the integrity of these proceedings but have caused significant emotional distress to both myself and my family. I seek remedial action to restore fairness and integrity to this case and to hold Mr. Liebrader accountable for his behavior. Defendant's counsel continues to insinuate that a third party is responsible for my filings, casting doubt on my personal involvement in preparing and submitting my legal documents, citing a clerical error by the NY staff. Attorney's still ongoing failure to comply with procedural rules and court orders underscores the need for sanctions to prevent further delays and uphold the integrity of the judicial process. Thank you for your consideration.

Respectfully submitted ,

Date 2/20/2025                          Signature :                          Sign Name : Aurore Sims, Pro Se Plaintiff